UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **ABC IP, INC.; LAD, LLC; and LAWRENCE DEMONICO**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SPIDER HOLE, LLC; SPIKE'S TACTICAL, LLC and MICHAEL REGISTER**<br><br>**Defendants.** | CIVIL ACTION NO.:  1:25-CV-01626<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff ABC IP, INC., and files this, its Original Complaint, and would respectfully show the following:

### PARTIES

1. Plaintiff ABC IP, INC. (hereinafter "ABC Inc") is a corporation duly incorporated and existing under the laws of the State of Texas since July 12, 2023, with its principal place of business at 6124 Osceola Trail, Austin, TX 78738. ABC Inc, as the purchaser of the claims herein, has been assigned the rights associated with the claims listed herein by ABC IP, LLC (hereinafter "ABC").

2. Plaintiff LAD, LLC (hereinafter "LAD") is a limited liability company whose sole member is Lawrence DeMonico, an individual residing in Austin, Texas.[1]

---

[1] For the purposes of establishing diversity jurisdiction involving limited liability companies, "the citizenship of an LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

3. Plaintiff Lawrence DeMonico (hereinafter "DeMonico") is an individual residing in Austin, Texas.

4. Defendant Spider Hole, LLC (hereinafter "Spider Hole") is a limited liability company with a mailing address of 110 Oakwood Dr, Maitland, FL 32751. Spider Hole's sole member is Michael Register, an individual residing in Maitland, Florida. It can be served through its registered agent, Michael Register.

5. Defendant Michael Register (hereinafter "Register") is an individual residing in Maitland, Florida. He can be served at 110 Oakwood Drive, Maitland, Florida 32751 or where ever he may be found.

6. Defendant Spike's Tactical, LLC (hereinafter "Spike's") is a limited liability company with a mailing address of 2036 Apex Court, Apopka, FL 32703. Spike's sole members are Michael Register, an individual residing in Maitland, Florida, and Angela Register, an individual residing in Maitland, Florida. It can be served through its registered agent, Michael Register.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Texas and citizens of Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction and venue is proper in this District because all parties are bound by a provision in ABC IP, LLC's Operating Agreement that designates the "federal and state courts of the State of Texas, County of Travis" as the "exclusive jurisdiction . . . in any action arising out of a dispute under or in connection with" 'the Operating Agreement (the

"Operating Agreement").[2]  Ex. A, Article XI, Section 11.8, pp. 31-32; *see also Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964*)* ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court.").[3]  A true and correct copy of the Operating Agreement is attached hereto as Exhibit A and incorporated by reference.

## FACTS

9. Michael Register operates numerous entities including, but not limited to, Spider Hole and Spike's Tactical without maintaining corporate formalities.

10. Utilizing the shell company, Spider Hole, LLC, Mr. Register fraudulently induced Plaintiff DeMonico to allow Mr. Register to become a member of ABC.

11. On or about September 17, 2024, Spider Hole, LAD, and others entered into the Operating Agreement drafted by an Austin-based law firm at the request of Lawrence DeMonico.

12. On September 27, 2024, Spider Hole was administratively dissolved by the State of Florida and would not be reinstated until April 9, 2025.

13. As an inducement to obtain equity in ABC from Plaintiff DeMonico and the other members of ABC, Defendant Register made promises to be the "Money Guy" and finance the operations of ABC. These promises were memorialized in the Operating Agreement in Section 3.2 which provided that Spider Hole, an entity owned solely by Register, would be the only party to provide capital to ABC.

14. Upon information and belief, Mr. Register knew well before signing the Operating Agreement and making false promises to Plaintiff DeMonico regarding financing that he would

---

[2] ABC IP, LLC assigned the entirety of its interest in the Operating Agreement to ABC IP, Inc., and this action arises out of dispute under or in connection to the Operating Agreement.
[3] Of the defendants, only Defendant Spider Hole was a signatory to the Operating Agreement. However, non-signatory Defendants Register and Spike's are bound to the forum selection provision because they are "closely related" to Defendant Spider Hole. *See Franlink Inc. v. BACE Services, Inc.*, 50 F.4th 432, 441 (5th Cir. 2022).

not be able to provide capital to ABC. Mr. Register intentionally deceived Plaintiffs to obtain an equity position within ABC.

15. Under the agreed terms of the Operating Agreement, Spider Hole was to actively participate in the management, operations, and business activities of the Company. Another promise Mr. Register knew he would not keep.

16. Spider Hole was notified on January 29, 2025 of its failure to actively participate in the management, operation, and business activities of the Company.

17. Spider Hole failed to remedy the failure and was in breach of the Operating Agreement.

18. Additionally, Spider Hole was solely responsible for providing the capital contributions necessary to fund the Company's endeavors.

19. On March 20, 2025, the managers of ABC met and voted on making a capital call to Spider Hole in the amount of $4,000,000 to be paid on or before March 31, 2025.

20. Spider Hole failed to meet the required capital contribution timely.

21. Accordingly, Spider Hole was in breach of the Operating Agreement.

22. Because of Spider Hole's failure to contribute capital to ABC, ABC was unable to fund the enforcement of its patents and numerous infringers have been selling unauthorized competitive goods causing the loss of income, the loss of royalties, and delayed prosecution of ABC's patents.

23. On April 1, 2025, ABC informed Spider Hole that Spider Hole was in breach of the Operating Agreement and, pursuant to Article III and Section 4.14(b) of the Operating Agreement, provided 10-day written notice of a meeting to vote on Spider Hole's removal as a member.

24. On April 16, 2025, ABC's Members met and voted to remove Spider Hole as a Member of ABC pursuant to Section 4.14 of the Operating Agreement.

25. In or around October 2022, ABC sent Spider Hole 1,024 WOT Triggers to hold in care of ABC.

26. The WOT Triggers were provided to Spider Hole with the understanding that if Spider Hole was able to sell any of them, the proceeds would be turned over to ABC.

27. Prior to January of 2023, Spider Hole sold 82 of the WOT Triggers and turned the proceeds over to ABC.

28. On January 25, 2023, a Federal Court issued a temporary restraining order (which later became an injunction) prohibiting the sale of FRT-15 triggers, WOT triggers, forced reset triggers, and other machinegun conversion devices by Kevin Maxwell, Lawrence DeMonico, Rare Breed Triggers, LLC, and Rare Breed Firearms, LLC. Mr. Register was told in no uncertain terms not to sell triggers because of this injunction and the fact that the enjoined parties could be held in contempt.[4]

29. On or about December 7th, 2024, Mr. Register was witnessed selling ABC's WOT triggers through his entity Spike's Tactical, LLC at a gun show. The proceeds of these sales were not shared with ABC.

30. Spider Hole should be in possession of 942 WOT Triggers valued at approximately $300 each that it was told explicitly not to sell for fear of violating a Federal Court ordered injunction.

---

[4] Register told third parties "Well that's their problem, I need a new boat" when asked about the risk to DeMonico and Kevin Maxwell of selling the WOT triggers in violation of the injunction.

31. Spider Hole intentionally and maliciously sold the WOT Triggers, at one point acknowledging and intentionally disregarding the risk to Plaintiff DeMonico personally that the sale would violate the injunction.

32. To make it worse, Spider Hole then failed to remit payment to ABC from the improper sales resulting in damages to the Company and its members of more than $280,000 as well as exposure to DeMonico for contempt of court.

33. On April 16, 2025, ABC demanded the return of those 942 WOT Triggers.

34. Mr. Register has acknowledged possession of the WOT Triggers yet Spider Hole has not returned the WOT Triggers or turned over the proceeds of their sale.

## COUNT I
## CONVERSION – Spider Hole, LLC

35. ABC re-alleges and incorporates by reference Paragraphs 1-34 of its Petition as if fully set forth herein.

36. Spider Hole, without ABC's consent or authorization, exercised control and dominion over ABC's property in a manner that was inconsistent with ABC's ownership rights. Spider Hole wrongfully exercised control over the WOT Triggers by continuing to hold them or the proceeds from their sale, despite ABC's demand that they be returned. ABC has suffered damages as a natural and proximate result of Spider Hole's actions.

37. Spider Hole's conduct constitutes conversion under Texas law as Texas was the location where LAD was operating and storing the triggers prior to sending them to Spider Hole. ABC seeks the return of the WOT Triggers or their value at the time and place of conversion, together with interest and costs.

## COUNT II
## BREACH OF CONTRACT – CONSEQUENTIAL DAMAGES – Spider Hole, LLC

38. ABC alleges and incorporates by reference Paragraphs 1-34 of the Petition as if fully set forth herein.

39. Spider Hole failed to provide capital pursuant to its promise to do so in Section 3.2 of the Operating Agreement. The failure to contribute capital was a breach of the Operating Agreement and that breach harmed ABC.

40. Contract damages are intended to put the non-breaching party in the position it would have occupied but for the breach. *eCommerce Indus., Inc. v. MWA Intelligence, Inc*., 2013 WL 5621678 at *44 (Del. Ch. Sept. 30, 2013). Accordingly, the Court considers how the positions of parties would differ in the hypothetical world that would exist if the contract had been fully performed. *Id*.

41. Damages are consequential when the breaching party's actions cause the non-breaching party to suffer a loss of profit on a collateral business arrangement. *Frank Invs. Ranson, LLC v. Ranson Gateway, LLC*, No. CV 11101-VCN, 2016 WL 769996, at *13 (Del. Ch. Feb. 26, 2016). A plaintiff may recover consequential damages by showing that "at the time of the contract the parties could reasonably have anticipated that these damages would be a probable result of a breach." *Desco Corp. v. Harry W. Trushel Constr. Co*., 413 S.E.2d 85, 89 (W.Va.1991).

42. Defendant Register engaged in numerous conversations with Plaintiff DeMonico regarding the necessity of funding to enforce ABC's claims then used Spider Hole as a vehicle to perpetrate his fraud. Given the volume and frequency of these conversations, it was not only reasonable but expected that ABC would suffer financial harm by Register and Spider Hole's failure to contribute capital as promised in the Operating Agreement.

43. As a result of Spider Hole and Register's breach, Plaintiff ABC suffered consequential damages and is entitled to recovery from Defendants.

## COUNT III
## FRAUD – Michael Register

44. Common law fraud consists of five elements: "1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." *Malinak v. Kramer*, No. CIV.A. CPU6-11002145, 2012 WL 174958, at *2 (Del. Com. Pl. Jan. 5, 2012).

45. ABC, DeMonico, and LAD allege and incorporate by reference Paragraphs 1-34 of the Petition as if fully set forth herein.

46. Defendant Spider Hole, LLC, through its principal Michael Register, fraudulently induced Plaintiffs to admit Spider Hole as a Member of ABC by falsely representing that it would serve as the Company's primary source of capital.

47. Register knew he had no intention of fulfilling those obligations and had not set aside, earmarked, or reserved any funds for ABC's use, instead electing to pad his own pockets by investing in $5 million in unencumbered real estate assets and purchasing of over 30 boats and extravagant luxury items.

48. As a result of Mr. Register's fraud, he realized $6,639,500.20 in distributions he otherwise would not have received.

49. Plaintiffs reasonably relied on Register's representations in choosing him as a member of ABC and structuring the Company's capital strategy around his purported role as the "money guy." As a direct result of this fraudulent inducement, Plaintiffs suffered significant damages including unmet capital contributions, lost business opportunities, operational delays, and disproportionate financial burdens assumed by other members.

## COUNT IV
## PIERCING THE CORPORATE VEIL/ALTER EGO

50. "Delaware courts consider various factors in assessing whether to disregard the corporate form, including: '(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.' No single factor is dispositive. Rather, '[a]n ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to 'an overall element of injustice or unfairness.'" *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *5 (Del. Ch. Sept. 5, 2023).

51. ABC, DeMonico, and LAD allege and incorporate by reference Paragraphs 1-34 of the Petition as if fully set forth herein.

52. Spider Hole was not, at the time it entered into the Operating Agreement, and is not now, adequately capitalized to honor its financial obligations to ABC.

53. Not only is Spider Hole not adequately capitalized, it was administratively dissolved within a couple of weeks of executing the Operating Agreement.

54. Upon information and belief, Spider Hole does not maintain corporate formalities.

55. Upon information and belief, Spider Hole never had funds to be siphoned.

56. Mr. Register simply uses Spider Hole as a façade in a veiled attempt to create a corporate shield for his fraudulent activity.

57. Mr. Register has failed to operate Spider Hole as an actual business and should not be afforded the protections of a limited liability company. When the above factors are substantively met, the Court may disregard the corporate entity and assert all obligations on the individual, in

this case Mr. Register.

58.     Because Mr. Register used a sham organization, namely Spider Hole, to enter into the Operating Agreement ultimately breached by Mr. Register and Spider Hole, it is equitable that he be held personally liable for his sham company's obligations.

## COUNT V
## UNJUST ENRICHMENT – Spike's Tactical

59.     "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *RCS Creditor Tr. v. Schorsch*, 2018 WL 1640169, at *7 (Del. Ch. Apr. 5, 2018) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).

60.     "To assert a claim for unjust enrichment, a plaintiff must prove the following elements: '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.'" *PR Acquisitions, LLC v. Midland Funding LLC*, No. CV 2017–0465–TMR, 2018 WL 2041521, at *14 (Del. Ch. Apr. 30, 2018)

61.     ABC, DeMonico, and LAD allege and incorporate by reference Paragraphs 1-34 of the Petition as if fully set forth herein.

62.     Spike's Tactical received WOT triggers from Defendant Register that neither Mr. Register nor Spike's Tactical paid for, sold the same triggers at a gun show, then kept the proceeds of the triggers.

63.     Upon information and belief, in December 2024, Spike's Tactical sold multiple ill-begotten triggers valued at $300 each depriving ABC of an estimated amount of over $15,000.

64.     Spike's Tactical was enriched financially to the detriment of ABC. There is no justification for this activity and, without Court intervention, ABC will not be made whole.

65.     Further, for the reasons listed in Count V, any obligations imposed on Spike's Tactical should also be imposed on Michael Register.

## COUNT VI
## BREACH OF FIDUCIARY DUTY – Spider Hole, LLC

66.     "A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *McKenna v. Singer*, No. 11371-VCMR, 2017 WL 3500241, at *15 (Del. Ch. July 31, 2017).

67.     ABC alleges and incorporates by reference Paragraphs 1-34 of the Petition as if fully set forth herein.

68.     Spider Hole, LLC, as a member of ABC IP, LLC, owed ABC a fiduciary duty to, at a minimum, act in the best interest of the company but certainly to not steal company property, sell it, and keep the proceeds for itself.

69.     It violated that duty when it, amongst other things, sold company property and failed to remit the proceeds to the company.

## PRAYER FOR RELIEF

WHEREFORE, ABC respectfully requests that this Court enter:

A.      A judgment in favor of ABC on its Claims of Conversion, Breach of Contract, Fraud, Breach of Fiduciary Duty and Unjust Enrichment;

B.      A judgment in favor of LAD, LLC and DeMonico on their claims of Fraud; and

C.      Any and all other relief to which Plaintiffs may show themselves to be entitled.

Dated: October 8, 2025                          Respectfully submitted,

                                                */s/ Jared Greathouse*
                                                Jared A. Greathouse
                                                Texas State Bar No. 24077284
                                                Robert A. Rhodes
                                                Texas State Bar No. 24116958

**MUNSCH HARDT KOPF & HARR, PC.**
1717 West 6th Street, Suite 250
Austin, Texas 78703
Telephone: 512.391.6100
Facsimile: 512.391.6149
Email: jgreathouse@munsch.com

**ATTORNEY FOR PLAINTIFFS**